Garrick S. Lew
600 Townsend Street, Suite 329E
San Francisco, California 94102
Telephone: (415) 575-3588
Facsimile: (415) 522-1506
gsl@defendergroup.com

Attorney for Defendant
STEVEN NEWTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
San Francisco Venue

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR-05-00208-10 CRB |
| Plaintiff, ) | |
| vs. ) | DEFENDANT'S SENTENCING MEMORANDUM |
| STEVEN NEWTON, ) | |
| Defendant. ) | |

## I. INTRODUCTION

Pursuant to a cooperation Plea Agreement, Steven Newton entered a plea of guilty to a violation of Title 18 USC 1343 and 2, Wire Fraud and Aiding and Abetting, and Title 15 USC 1, 18 USC 2, Collusion and Aiding and Abetting. The United States Probation Office has prepared a Presentence Report (PSR) and concluded that the advisory United States Sentencing Guideline (USSG) in this case is Total Offense Level 21, Criminal History Category I. Mr. Newton has no objection to the Guideline calculations or the facts contained in the PSR.

The United States has filed a motion pursuant to USSG 5K1.1, based on Mr. Newton's substantial assistance in the prosecution of other defendants and has recommended that the Court sentence Mr. Newton consistent with a Guideline Level 15, or 18 to 24 months of custody. The Government asserts that such a downward variance from the Guideline is justified by both Mr. Newton's cooperation and his personal circumstances.

**DEFENDANT'S SENTENCING
MEMORANDUM [CR05-00208-10 CRB]**                                                                 1

Mr. Newton comes now before the Court substantially agreeing with the Government's analysis.[1] However, Mr. Newton respectfully requests that the Court sentence him to home confinement for his custody time, because of his extraordinary medical needs, his personal background and characteristics, as well as the substantial assistance he has provided to the Government.

## II. BACKGROUND

The PSR and the Government's Sentencing Memorandum and Motion for Downward Departure (Government's Motion) fully outline the circumstances of Mr. Newton's offense behavior, his background and characteristics, and the extensive scope of his cooperation with the Government. Most of that detail need not be repeated here. However, there are salient factors Mr. Newton wishes the Court to consider at sentencing.

The present prosecution is Mr. Newton's first and only conviction.[2] He has a long history in technology sales and government contracting. It was only when he became involved with co-defendant Judy Green that Mr. Newton became involved with illegal activity. Heretofore, his record in the technology industry was spotless.

Mr. Newton's involvement in the present offense has resulted in his economic devastation. He is in the process of filing for bankruptcy, as he has a negative net worth and substantial outstanding debts (PSR ¶ 76-83). His present businesses, Digital Connect and DCCI LLC Consulting are essentially dormant, generating little or no income. Mr. Newton must essentially start

---

[1] It should be noted that the Government misstates the Probation Office's guideline calculations in its *Memorandum*.(*Gov. Memorandum* at p.3). The correct guidelines offense level calculated by the Probation Office is 21, as stated in the PSR, not 23 as indicated by the Government. An eight-level downward departure would therefore place Mr. Newton at a Level 13, or 12 to 18 months.

[2] In the context of a family law dispute, in 1990, Mr. Newton was prosecuted in Los Angeles for an allegation related to his fiancé's (now wife) divorce action. Following a jury trial hung jury 11-1 for acquittal, charges were dismissed.

**DEFENDANT'S SENTENCING MEMORANDUM [CR05-00208-10 CRB]**          2

over at age 55.

Mr. Newton fully supports his wife, his nineteen year old step-son, who lives with him at home and is in college, his biological son, Steven, who is twenty-two years old, as well as his 86 year old mother-in-law who suffers from Alzheimer's disease and also resides at home with Mr. Newton and his family. Mr. Newton's son Steven has been diagnosed with severe depression (his weight as a result having at one point dropped from 160 pounds to 118 pounds on a 5'11" frame) and has developed extreme obsessive compulsive disorders. Mr. Newton pays out-of-pocket for Steven's expensive medications, including Wellbutrin, LexaPro, and anti-seizure medication. Steven relies on his father completely for both medical and emotional support. If Mr. Newton were imprisoned he would be financially unable--and physically unable--to continue to help his son with his condition and to support the many family members relying on him as their sole and only source of income.

More significantly, however, is Mr. Newton's precarious health. In 2000, Mr. Newton was diagnosed with heart disease, which runs in his family on both sides. A stent was installed in his left anterior descending artery on March 14, 2000 and he continues to suffer from angina and severe anxiety attacks. On Thursday, March 27, 2008, Mr. Newton was admitted to Saddleback Memorial Hospital in San Clemente, California due to severe chest pains and other sensations indicative of a heart attack. He was kept in the hospital for testing and observation until Saturday, March 29th. EKGs showed possible abnormalities. Mr. Newton was told he most likely needs to have his stent replaced and that an angiogram should be conducted to test for a blocked artery. Mr. Newton has a follow-up appointment on April 7th at which time the battery of tests performed on Mr. Newton during his hospital stay will be discussed and further analyzed.

### III. APPLICABLE SENTENCING LAW

The landmark decision in ***United States v. Booker***, 160 L. Ed. 2d 621, 125 S.Ct. 738 (2005), changed sentencing in the Federal Courts. ***Booker*** renders the Guidelines as advisory only, and instructs the sentencing courts to consider the Guidelines in context of all of those factors enumerated in Title 18 USC 3553(a). The Court found that the mandatory application of the

**DEFENDANT'S SENTENCING**
**MEMORANDUM [CR05-00208-10 CRB]**                    3

Guidelines was unconstitutional. In the ***Booker*** Remedy Opinion, the Court stated:

> "We answer the question of remedy by finding the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C.A. 3553(b)(1) (Supp. 2004), incompatible with today's constitutional holding. We conclude that this provision must be severed and excised, as must one other statutory section, 3742(e) (main ed. And Supp. 2004), which depends upon the Guidelines mandatory nature. So modified, the Federal Sentencing Act, See Sentencing Reform Act of 1984, as amended, 18 U.S.C. 3551 *et seq*., 28 U.S.C. 991 *et seq*., makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see 3553(a) (Supp. 2004)." At 651.

Further, with respect to appellate review of sentencing decisions, the Court stated:

> "We infer appropriate review standards from related statutory language, the structure of the statute, and the 'sound administration of justice.' And in this instance those factors, in addition to the past two decades of appellate practice in cases involving departures, imply a practical standard of review already familiar to appellate courts: review for 'unreasonableness.'"
>
> . . . Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." ***Booker***, at 660-661.

The Supreme Court addressed the issue of the "presumption of reasonableness" of a within Guidelines sentence in ***Rita v. United States***, 127 U.S. 2456, 168 L.Ed. 2d 203 (2007) and instructed that a within Guideline sentence is presumed reasonable only upon **appellate review**. The Court stated:

> "We repeat that the presumption before us is an *appellate* court presumption. Given our explanation in *Booker* that appellate "reasonableness" review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review. The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. *18 U.S.C. § 3552(a); Fed. Rule Crim. Proc. 32*. He may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines, to apply, *USSG § 5K2.0*, perhaps because the Guidelines sentence itself fails properly to reflect *§ 3553(a)* considerations, or perhaps because the case warrants a different sentence regardless. See *Rule 32(f)*. Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. See *Rules 32(f), (h), (i)(1)(C)* and *(i)(1)(D)*, see also *Burns v. United States, 501 U.S. 129, 136, 111 S. Ct. 2182, 115 L.Ed. 2d 123 (1991)* (recognizing importance of notice and meaningful opportunity to be heard at sentencing). In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. *Booker, 543 U.S. at 259-260, 125 S.Ct. 738, 160 L. Ed. 2d 621*." at 214.

**DEFENDANT'S SENTENCING**
**MEMORANDUM [CR05-00208-10 CRB]**                4

Further, the Court instructed:

> "The fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness. Even the Government concedes that the appellate courts may not presume that every variance from the advisory Guidelines is unreasonable." at 216.

The Supreme Court has now articulated the process by which sentencing and appellate courts must implement the findings in **Booker**, including the admonition of **Rita**. The court has directed:

> "As we explained in **Rita**, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. . . . He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.
>
> . . . Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. . . . But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the §3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." **Gall v. United States**, 128 S.Ct. 586, 596-597, 169 L. Ed. 2d 445 (2007) (citations and footnotes omitted).

Before **Gall** and **Rita**, the 9th Circuit anticipated their instructions. It directed the sentencing court to accurately calculate the Guidelines,[3] it may then determine if there are any justifiable

---

[3] The district court is not to consider the "reasonableness" of each adjustment in calculating the Guidelines, but must consider the overall reasonableness of the Guideline range. **United States v. Barsumyan**, 2008 U.S. App. LEXIS 4295, *11 (9th Cir. February 28, 2008).

**DEFENDANT'S SENTENCING**
**MEMORANDUM [CR05-00208-10 CRB]**                               5

departures from the Guidelines, and then consider the Guidelines as but one factor among all of the factors outlined in Title 18 USC 3553(a), to reach a reasonable sentence. *United States v. Menyweather*, 431 F.3d 692, 696 (9th Cir. 2005), reprinted as amended at 447 F.3d 625, 630 (9th Cir. 2006). A formal determination of "departures," as required under a mandatory guideline system, may be both redundant or unnecessary, under a unitary determination of reasonableness of a sentence.[4] A determination of an allowable departure under the pre-*Booker* regime, however, may inform the court of the reasonableness of a sentence. *United States v. Mohamed*, 459 F.3d 979, 986-87 (9th Cir. 2006). See, also, *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (the district court is to first calculate the Guidelines accurately and then examine the sentence for reasonableness in light of 18 USC 3553(a)). Further, the court said, "An error in determining the Guidelines range, or in understanding the authority to depart from that range, can prevent district courts from properly considering the Guidelines." *Menyweather*, *id*, at 630.[5]

The Court must now consider 18 USC 3553(a) in its entirety and impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The court, in determining the particular sentence to be imposed, shall consider –

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed --

    (a) to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense;

---

[4] "The system of downward departures that still guides the sentencing court's determination of the Guidelines-recommended range as required under § 3553(a)(4) does not preclude the court's discretion to consider other § 3553(a) factors. . . . Just because a consideration was improper under the mandatory Guidelines regime does not mean that it is necessarily improper under the advisory Guidelines regime." *United States v. Garcia*, 497 F.3d 964, 971-72 (9th Cir. 2007).

[5] A sentencing court's interpretation of the Guidelines is reviewed *de novo*, *United States v. Hernandez*, 476 F.3d 791, 802 (9th Cir. 2007); factual findings are reviewed for clear error, *United States v. Kimbrew*, 406 F.3d 1149, 1152 (9th Cir. 2005); application of the Guidelines to facts of the case is reviewed for abuse of discretion (*Kimbrew*, *id* and *Cantrell*, *id* at 1279).

**DEFENDANT'S SENTENCING MEMORANDUM [CR05-00208-10 CRB]**     6

    (b)  to afford adequate deterrence to criminal conduct;

    (c)  to protect the public from further crimes of the defendant; and

    (d)  to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner;

The sentencing court is now required to consider factors that the Guidelines effectively prohibited from consideration (ie: Age, USSG 5H1.1; Education and Vocational Skills, USSG 5H1.2; Mental and Emotional Condition, USSG 5H1.3; Physical Condition Including Drug or Alcohol Dependence, USSG 5H1.4; Employment, USSG 5H1.5; Family Ties and Responsibilities, USSG 5H1.6; Socio-economic Status, USSG 5H1.10; Civic and Military Contributions, USSG 5H1.11; and Lack of Youthful Guidance, USSG 5H1.12.). *United States v. Ameline*, 409 F.3d 1073, 1093 (9th Cir. 2005) (*en banc*). To consider the "history and characteristics of the defendant," the Court must now consider factors the Guidelines eschewed.

Finally, the Supreme Court has cautioned that respect for the law is promoted in many ways, not always measured by the strictness of sentences or the nature of harsh sanctions. The has stated:

> ". . . Moreover, the unique facts of Gall's situation provide support for the District Judge's conclusion that, in Gall's case, "a sentence if imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, *id.*, at 599.

In order to meet the mandate of the ***Booker*** remedy, then, this court must calculate the appropriate guidelines range and may consider appropriate departures. It must also apply the 3553(a) factors and address any other specific characteristics of the defendant or his offense that might impact the determination of a "reasonable" sentence under the particular circumstances of this case. The district court's sentencing decision will then be subject to an abuse-of-discretion review by the circuit.

### IV. A REASONABLE SENTENCE

The Government's analysis and recommendation has merit. Mr. Newton's medical condition, however, is precarious. He has a history of serious cardiovascular disease and recently underwent hospitalization for severe chest pains indicative of a heart attack. It is requested that the

**DEFENDANT'S SENTENCING**
**MEMORANDUM [CR05-00208-10 CRB]**       7

1  Court sentence Mr. Newton within the Level 13 Guideline range, but impose the sentence as home
2  confinement as a condition of probation.  Such a sentence will punish Mr. Newton, but enable him
3  to continue in the care of his cardiologist, at his expense.  The Guidelines themselves take into
4  account Mr. Newton's very circumstances. At USSG 5H1.4 it states:

> ". . . However, an extraordinary physical impairment may be a reason to depart downward; <u>e.g.</u>, in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."

7  Therefore, in light of the above, it is respectfully requested that the Court sentence Mr.
8  Newton to five years probation, upon the condition that he serve 18 months in home confinement.
9  As indicated in the Government's Motion, the victims' loss has been addressed in a companion civil
10 action and as the PSR indicates, Mr. Newton is fundamentally indigent and incapable of paying a
11 fine.

                    Respectfully submitted,

                    /s/

                    Garrick S. Lew
                    Attorney for Defendant STEVEN NEWTON

**DEFENDANT'S SENTENCING MEMORANDUM [CR05-00208-10 CRB]**                    8